UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CRISTINA M. BENTO, : | |
| *Plaintiff* : | |
| v. : | |
| : | C.A. No. 20-cv- |
| CRAIG LETOURNEAU, alias, individually and : | |
| in his official capacity as a Pawtucket Police : | |
| and CITY OF PAWTUCKET, by and through its : | *Jury Trial Requested* |
| Finance Director, Joanna L'Heureux : | |
| *Defendants* : | |

**COMPLAINT**

**I. INTRODUCTORY STATEMENT**

1. Through this civil action, Plaintiff Cristina Bento, a Black woman of Cape Verdean descent, seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages for acts and/or omissions of Defendants in violation of Plaintiff's rights to freedom of speech, freedom from unreasonable seizure, and equal protection under the First, Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. §1983, and under Article 1, §§ 2, 6 and 21 of the Rhode Island Constitution, as well as violations of statutory law of the State of Rhode Island.

2. Plaintiff's claims stem from the events of a Pawtucket City Planning Committee meeting held October 17, 2017 in Pawtucket City Council chambers. Defendant Craig Letourneau ("Defendant Letourneau"), prompted by City officials, picked out Plaintiff from a crowd of about two hundred white attendees, aggressively grabbed her arm, and demanded that she leave this public meeting.

3. The City of Pawtucket conspired in and ratified Defendant Letourneau's actions through the participation of two officials from the City Solicitor's office in the targeting of Ms. Bento, its civilian complaint process, whereby the Police Department Office of Professional Standards first sustained part of the complaint and then reversed itself and endorsed Defendant's actions.

## II. Parties

4. Plaintiff Cristina M. Bento ("Plaintiff" or "Ms. Bento") is a lifelong resident of Pawtucket, Rhode Island and has been an advocate in the city's Cape Verdean community since childhood. Ms. Bento is a Black woman of Cape Verdean descent. At all times relevant to this complaint, Ms. Bento was a resident of Pawtucket, Rhode Island.

5. Defendant Craig Letourneau ("Defendant Letourneau") is sued in his individual capacity and in his official capacity as a Pawtucket Police officer. At all times relevant to this complaint, he was acting within the scope of his employment and under color of law.

6. Defendant City of Pawtucket ("Defendant City" or "City") is a municipal corporation duly authorized and organized under the laws of the state of Rhode Island and is sued through its Finance Director, Joanna L'Heureux, the official designated by R.I.G.L. §45-15-5 to be named in a suit for relief against the City.

## III. Jurisdiction

7. This Court has jurisdiction pursuant to 28 U.S.C. §§1331, 1343, 1367, 2201 and 2202.

## IV. Venue

8. Venue is proper in this Court since, on information and belief, all of the Defendants reside or may be found in the District of Rhode Island in compliance with the requirements set forth in

28 U.S.C. §1391.  Venue is also proper because a substantial part of the events and omissions giving rise to these claims occurred in the District of Rhode Island.

### V. Material Facts

9. On October 17, 2017 the Pawtucket City Planning Commission held a public meeting in Pawtucket City Hall to discuss a proposed garbage transfer station.

10. Approximately two hundred (200) people were in attendance at the meeting, many of them not Pawtucket residents.

11. Upon information and belief, Plaintiff was the only BIPOC[1] person among the audience at the time of the events described herein, and was the only brown-skinned person in the audience.

12. Throughout the meeting, many of the white people in the audience spoke out of order, shouting and screaming, interrupting designated speakers, disrespecting the chairperson, and often using vulgar language.

13. According to Defendant Letourneau "the tension in the room was palpable, nearing a boiling point."  Nonetheless, this bedlam continued for approximately three (3) hours with no intervention by Defendant Letourneau or any other police officer.

14. At two separate times, a white audience member standing standing only feet away from Defendant Letourneau told the meeting chair that if he did not like what the audience member was saying, "then throw me out!"  Defendant Letourneau made no response to the white audience member's taunt.

15. After approximately three (3) hours, Ms. Bento had not spoken out when a woman seated in front of her stood up and asked a question of the attorney who was advocating on behalf of the proposed transfer station.  The attorney ignored the woman's question.

---

1  "BIPOC" is an acronym for Black, Indigenous and People of Color, and is used here to indicate persons who are of African, Indigenous, Asian or Latinx descent, or otherwise identify as a race not solely European or Caucasian.

16. A number of people yelled out in support of the woman who had asked the question, some getting out of their seats, and shouting "this is bullshit!" and other comments in a similar vein. After the woman asked her question two more times, the attorney responded that he would not answer her question, and a different woman, sitting approximately two feet away from police, called out that the attorney should stop yelling at her. The police made no attempt whatsoever to intervene or speak to any of the individuals who were shouting.

17. Finally, after more than three hours sitting quietly and observing the bedlam in silence, Ms. Bento called out, "If you are not going to answer her, sit down and shut up then." Unlike many of the white speakers, Ms. Bento remained seated when she spoke.

18. Assistant City Solicitor Lisette Gomes at one point made eye contact with Defendant Letourneau and pointed directly at Ms. Bento.

19. Soon after, City Solicitor Frank Milos entered the Council chambers and also, after making eye contact with Defendant Letourneau, pointed at Ms. Bento.

20. Defendant Letourneau rushed over and ordered Ms. Bento – only Ms. Bento – to be quiet.

21. Ms. Bento remained seated, stayed calm, looked Defendant Letourneau in the eye and said, "You only hear me?"

22. Defendant Letourneau barked in response, "Yes! I only hear you!"

23. Certain that she must have misheard him, Ms. Bento asked Defendant Letourneau, "Wait, all these people yelling behind you right now and you only hear *me*?"

24. By this time, Defendant Letourneau's face had turned red, and he yelled, "I only hear you!"

25. Realizing that she was the entire focus of Defendant Letourneau's crowd control strategy, Ms. Bento said, "Yes, I see. You only hear the only brown girl in the room."

26. Defendant Letourneau struck out his arm and roughly grabbed Ms. Bento by the arm.

27. Defendant Letourneau stands approximately six feet two inches, while Ms. Bento is five foot four inches.
28. Ms. Bento's friend, Linda Farinelli ("Ms. Farinelli") stepped away to ask Ms. Bento's City Council representative, Timothy Rudd ("Councilman Rudd"), to come to Ms. Bento's aid.
29. Ms. Bento told Defendant Letourneau to remove his hands from her.
30. Defendant Letourneau let go of Ms. Bento's arm.
31. As Ms. Bento's Councilman approached, Defendant Letourneau ordered Ms. Bento to leave the public meeting.
32. Councilman Rudd asked Defendant Letourneau "Why her?  She hasn't been as loud as anyone else," and asked whether Ms. Bento could stay if she promised to be quiet.
33. Defendant Letourneau ignored Councilman Rudd, so Ms. Bento, concerned for her safety and hoping to de-escalate the situation, announced that she would comply with Defendant Letourrneau's order to leave.
34. Ms. Bento left the Council Chambers accompanied by Ms. Farinelli.
35. At Ms. Bento's request, Ms. Farinelli, who is white, went back inside the Council chambers and asked Defendant Letourneau his name, since he had not bothered to introduce himself to Ms. Bento before seizing her and ordering her not to speak.
36. Defendant Letourneau told Ms. Farinelli to tell Ms. Bento to wait and that he would identify himself after the meeting was over.
37. Ms. Farinelli asked Councilman Rudd, who is a Providence police officer, to convince Defendant Letourneau to identify himself.
38. Councilman Rudd reminded Defendant Letourneau that it is Ms. Bento's right to ask the defendant to identify himself.

39. Defendant Letourneau still refused to identify himself.

40. Meanwhile out in the hallway, Ms. Bento placed a call to the Pawtucket Police station to speak with Defendant Letourneau's superior. While she was on the phone Ms. Bento observed another officer approach the Council chambers.

41. Defendant Letourneau's supervisor advised Ms. Bento that she should leave City Hall and that he would contact her as soon as the meeting was over.

42. Shaken, Ms. Bento returned home and sat in her car, in her driveway, until after 11p.m.

43. Hoping for peace of mind, Ms. Bento finally called the supervisor. He told Ms. Bento that the delay was in order to prepare a report and told her the name of the officer involved.

44. Ms. Bento was upset to learn that after Defendant Letourneau had assaulted her, forbidden her from speaking, and ejected her from a public meeting, she was now the subject of a police report.

45. The next morning, October 18, 2017, Ms. Bento walked into the Pawtucket Police station to file a civilian complaint.

46. On January 29, 2018 Detective Sgt. Theodore Goergitsis ("Sgt, Georgitsis") of the Pawtucket Police Office of Professional Standards ("OPS") wrote to Ms. Bento informing her that OPS sustained "part of" Ms. Bento's complaint. Sgt. Georgitsis did not explain what portions of the complaint OPS sustained.

47. Sgt. Goergitsis however refused to disclose what discipline the Department may have imposed on Defendant Letourneau, even as he acknowledged that the incident "may have caused" negative influence for Ms. Bento.

48. Strangers on social media repeatedly referred to Ms. Bento as "the lady who got thrown out of council chambers" and wrote that police don't like her.

49. Before Defendant Letourneau attacked her, Ms. Bento attended roughly eighty percent (80%) of City Council meetings. After the attack, she recruited people to escort her to public meetings, in order to have witnesses in case of harassment by police or the public.

50. Even more unsettling than the damage to her reputation, Ms. Bento had no information as to whether the Police Department had taken any actions to control Defendant Letourneau's aggressive and irrational behavior. Ms. Bento lived in fear for her own safety and that of her family.

51. Because of her fear that Defendant Letourneau might direct another unprovoked outburst toward her, Ms. Bento avoided the area of the city where she knew him to be assigned. This meant she could no long drive her son to school if he missed the bus, because his school was located in that area of the city.

52. Ms. Bento gave up a job opportunity because it was also located in the area where she knew Letourneau to be working.

53. Deeply disappointed with her city's unwillingness to resolve the attack on Ms. Bento's free speech by Defendant Letourneau, on March 12, 2018. Ms. Bento filed a Notice of Claim with the City Council.

54. In a letter dated March 21, 2018 to the City Clerk Richard J. Goldstein addressing Ms. Bento's claim against the City, Sgt. Goergitsis revised te conclusion of OPR's assessment of Ms. Bento's complaint to say "there was no indication that the officer was intentionally discriminatory or that the officer expressed any bias or prejudice toward the claimant."

55. Sgt. Goergitis's letter to the City Clerk made no mention of any portion of Ms. Bento's complaint being sustained, much less what conduct those portions addressed.

56. The actions of the individual defendants as aforesaid warrant the imposition of punitive damages upon each of them as allowable by law as follows:

   a) as to claims under Rhode Island law:  the conduct and actions of each individual Defendant were taken in a gross abuse of the Defendants' exercise of their individual and/or corporate powers, were motivated by malice or in bad faith and presents "evidence of such willfulness, recklessness or wickedness, on the part of the party at fault, as amounts to criminality, which for the good of society and warning to the individual, ought to be punished." *Felkner v. RI College,* 203.A.3d 433, 461 (R.I. 2019).

   b) as to claims under federal law:  the conduct of each individual Defendants was motivated by evil motive or intent or undertaken in reckless or callous indifference to federally protected rights of the Plaintiff.

## VI.  Claims For Relief

57. Plaintiff hereby incorporates into the counts below the allegations contained in all preceding paragraphs (1 through 56) as if fully set forth herein.

### COUNT ONE
*Violation of Plaintiff's Freedom of Speech Under the First Amendment,
Actionable Through 42 U.S.C. § 1983 Against All Defendants*

58. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, denied Plaintiff her right to freedom of speech as guaranteed under the First Amendment of the United States Constitution, causing Plaintiff to suffer harm as aforesaid.

### COUNT TWO
*Denial of Plaintiff's Freedom of Speech in Violation of Art. I, §21 of the Rhode Island Constitution,*
*Against All Defendants*

59. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, denied Plaintiff her right to freedom of speech as guaranteed under Article I, §21 of the Rhode Island Constitution, causing Plaintiff to suffer harm as aforesaid.

### COUNT THREE
*Unreasonable Seizure in Violation of the Fourth and Fourteenth Amendments,*
*Actionable Through 42 U.S.C. § 1983 Against All Defendants*

60. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, acted unreasonably in arresting Plaintiff, in violation of the Fourth and Fourteenth Amendments of the United States Constitution, causing Plaintiff to suffer harm as aforesaid.

### COUNT FOUR
*Unreasonable Seizure in Violation of Article I, §6 of the Rhode Island Constitution,*
*Against All Defendants*

61. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, acted unreasonably in arresting Plaintiff, in violation of Article I, §6 of the Rhode Island Constitution, causing Plaintiff to suffer harm as aforesaid.

### COUNT FIVE
*Misdemeanor Arrest Without Warrant in Violation of R.I. Gen. Law §12-7-3*
*Against Defendant Rose and City of Pawtucket*

62. Defendant Rose, while acting in the scope of his employment, by his individual and/or concerted acts and/or omissions, including but not limited to those described herein,

arrested Plaintiff at school, without reasonable ground to believe that Plaintiff could not be arrested later or that she would cause injury to herself or others or damage to property, in violation of Rhode Island General Laws, causing Plaintiff to suffer harm as aforesaid.

### COUNT SIX
*Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection Actionable Through 42 U.S.C. § 1983 Against All Defendants*

63. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, violated Plaintiff's right to equal protection under the law, on the basis of her race, causing Plaintiff to suffer harm as aforesaid.

### COUNT SEVEN
*Violation of Plaintiff's Right to Equal Protection Under Article I, §2 of the Rhode Island Constitution, Against All Defendants*

64. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, and acting under color of law, violated Plaintiff's right to equal protection under the law, on the basis of her race, causing Plaintiff to suffer harm as aforesaid.

### COUNT EIGHT
*Civil Rights Act of 1990, R.I. Gen. Law §42-112-1 et seq.*

65. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, discriminated against Plaintiff based on her race, causing Plaintiff to suffer harm as aforesaid, and have thereby deprived Plaintiff of rights secured under R.I. Gen. Law §42-112-1 *et seq.*

### COUNT NINE
*Common Law Battery*

66. Defendants, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, caused an unwanted touching of Plaintiff Bento.

## COUNT TEN
### *Intentional Infliction of Emotional Distress*

67. Defendants, while acting in the scope of their employment, by their individual and/or concerted acts and/or omissions, including but not limited to those described herein, caused intentional infliction of emotional distress with physical manifestations to Ms. Bento including headaches, high blood pressure, and difficulty sleeping, as they knew or should have known that such an attack and its repercussions would cause.

### **Prayers for Relief**

WHEREFORE, Plaintiff hereby prays that this Court grant the following relief:

1. A declaratory judgment that the Defendants, in the manner described herein, violated the First, Fourth and Fourteenth Amendments to the United States Constitution and Article 1, §§2, 6, and 21 of the Rhode Island Constitution by violating Plaintiff's rights to freedom of speech, to be free from unreasonable seizure, and to have Equal Protection under the law, and that Defendants violated the statute and the common law of the State of Rhode Island.
2. An award of compensatory damages;
3. An award of punitive damages as allowed by law;
4. An award of pre- and post-judgment interest on all sums recovered, and an award of reasonable attorney's fees, expenses and costs of litigation to Plaintiff pursuant to 42 U.S.C. §1988;
5. Such other and further relief as this Court deems just and proper.

### VIII.   **Demand for Jury Trial**

Plaintiff hereby demands a trial by jury on all counts so triable.

### IX.   **Designation of Trial Counsel**

Plaintiff hereby designates Shannah Kurland, Esquire, as trial counsel.

Plaintiff, **CRISTINA M. BENTO,**
By her attorney,

**Date:  October 16, 2020**

/s/ Shannah Kurland _____
**Shannah Kurland, Esq**.  (#9186)
149 Lenox Avenue
Providence, RI 02907
Phone:  (401) 439-0518
skurland.esq@gmail.com