UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CRISTINA M. BENTO,<br><br>    Plaintiff,<br><br>    v.<br><br>CRAIG LETOURNEAU, individually and in his official capacity as a Pawtucket Police Officer, and the CITY OF PAWTUCKET, by and through its Finance Director, Joanna L'Heureux,<br><br>    Defendants. | C.A. No. 20-cv-00444-MSM-PAS |

# ORDER

Mary S. McElroy, United States District Judge.

This case arises from an encounter at an October 17, 2017, Pawtucket City Council meeting between the defendant Craig Letourneau, an officer of the police department of the defendant City of Pawtucket, and the plaintiff, Cristina M. Bento. The meeting was contentious, approximately 200 members of the public attended, though Ms. Bento was the only person of color among the crowd. Officer Letourneau approached Ms. Bento and spoke with her, though what had happened was disputed by the parties. Ms. Bento ultimately filed the instant suit, alleging statutory and constitutional violations, including (relevant here) a claim for violation of her right to equal protection under the Fourteenth Amendment because Officer Letourneau subjected her to an adverse action based on her race.

1

The case was tried to a jury that returned a verdict for the defendants on all counts. Ms. Bento now moves for a new trial under Fed. R. Civ. P. 59(a); specifically, she seeks a new trial with respect to Count V, the equal protection claim, because, she argues, the jury's verdict was against the clear weight of the evidence such that letting it stand represents a miscarriage of justice.[1] (ECF No. 49.)

Rule 59(a) "authorizes a district court to override a jury verdict and order a new trial 'if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice.'" *Sanchez v. Foley*, 972 F.3d 1, 16 (1st Cir. 2020) (quoting *Thomas & Betts Corp. v. New Albertson's, Inc.*, 915 F.3d 36, 60 (1st Cir. 2019). "Unlike its consideration of a motion for judgment as a matter of law, which requires the district court to construe the evidence in the light most favorable to the verdict, 'a district court is free to independently weigh the evidence' when assessing whether to grant a motion for a new trial." *Id.* (quoting *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009)). That said, "[i]n general, conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Id.*; *see also Blomquist v. Horned Dorset Primavera, Inc.*, 925 F.3d 541, 551 (1st Cir. 2019) ("[W]hen it comes to witness credibility our standard tilts in favor of deferring to the jury's verdict.")

---

[1] Ms. Bento originally moved for either a new trial under Rule 59(a) or, in the alternative, to alter the judgment in her favor under Rule 59(e). She does not press the Rule 59(e) argument in her memorandum and therefore the Court considers it abandoned and does not address it.

2

To prevail on her equal protection claim, Ms. Bento must have proved that "compared with others similarly situated, [she] was selectively treated … based on impermissible consideration such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Barrington Cove LP v. Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) (quoting *Rubinovitz v. Rogato*, 60 F.3d 906, 909-10 (1st Cir. 1995)). The jury was instructed that to state a prima facie case, Ms. Bento "must prove by a preponderance of the evidence that (1) she belongs to a protected class; (2) she was subject to an adverse action; (3) because of her protected status; and (4) that resulted in her injury." (ECF No. 55-1 at 27.) Further, "[i]f Ms. Bento can show that (1) she belongs to a protected class and (2) that she was subject to an adverse action, to provide the (3) third element, Ms. Bento may show that she was treated differently than similarly situated people." *Id.* If the jury was to find for Ms. Bento on these prima facie elements, the burden would then shift to the defendants to demonstrate that the different treatment was necessary to achieve a compelling purpose and that it could not be achieved through a less restrictive means. *Id.* at 28.

Ms. Bento's argues that she established her prima facie case through "uncontroverted" and "overwhelming" evidence. Yet the jury's verdict required the resolution of conflicting testimony and questions of the credibility of two key witnesses—Ms. Bento and Officer Letourneau. For instance, on the element requiring a showing that she was subject to an adverse action because of her race, while Ms. Bento provided evidence from which one could infer such animus, this was

3

directly contradicted by the testimony of Officer Letourneau. *See* ECF No. 54 at 114-15 ("I tried to have a conversation with [Ms. Bento] about why it is that I approached her. It had nothing to do with her race. It had to do with the fact that she was screaming out, and I needed her to lower her voice."); *id.* at 118 ("I came over to [Ms. Bento] because she, she was the loudest voice I could hear."). In the end, the jury credited Officer Letourneau's testimony, determining that his decision to approach Ms. Bento during the meeting was not impermissibly based on her race.

Similarly, whether she was subjected to an adverse action—that she was "threatened with ejection" from the meeting—was contradicted by Officer Letourneau's testimony, which the jury must have found more credible. In his telling, he told Ms. Bento that if she did not lower her voice, he would have to ask her to leave "[b]ut she kept on yelling. At that point she said, No, if you want me to leave, I'm leaving. I said, You don't have to leave; I'm just asking you to wait until you're called on. And then she said, No, I'm leaving." *Id.* at 19. To credit his testimony would lead to the conclusion that no adverse action took place—that Ms. Bento left the meeting on her own accord.

Determining these prima facie elements required the weighing of testimony and assessing the credibility of witnesses: Ms. Bento and Officer Letourneau. Despite the ample evidence that she offered, the jury credited Officer Letourneau. Again, "conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial." *Sanchez*, 972 F.3d at 16.

Finally, the Court notes that Ms. Bento premises her argument on a misplaced interpretation of the jury instructions. The jury was instructed that to demonstrate, as part of her prima facie case, that the adverse action was because of racial animus she "may show that she was treated differently than similarly situated people." (ECF No. 55-1 at 27.) In her view, the jury must find that she established her prima facie case if she showed that she was treated differently than similarly situated people. This ignores the permissive nature of the instruction ("may") which provides an example of one way that the plaintiff could demonstrate that the adverse action taken due to her race. The jury found that she did not meet her burden to establish a prima facie case, instead crediting contrary testimony from the defendant.

For these reasons, Ms. Bento's Motion for a New Trial (ECF No. 49) is DENIED.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge

February 27, 2025